NICHOL v BILLOT

OPINION OF THE COURT

1. TRIAL—PROCEDURE—JURY QUESTIONS—QUESTIONS OF LAW—
WAIVER—CO-EMPLOYEES—WRONGFUL DEATH.

A plaintiff waits too long in a wrongful death action and waives
any right he might have had to have the trial court decide
whether the plaintiff's decedent and defendant were co-em-
ployees where the plaintiff urged the trial court prior to trial to
submit the question to the jury, and where the plaintiff waited
until all proofs had been introduced before switching positions
and moving the trial judge to rule as a matter of law that the
defendant and decedent were co-employees.

2. APPEAL AND ERROR—WRONGFUL DEATH—WORKMEN'S COMPENSA-
TION—CO-EMPLOYEES—ISSUES OF FACT—JURY—STATUTES.

It was not error in a wrongful death action to deny a plaintiff's
motion to strike a defendant's affirmative defense that the
plaintiff's claim was barred under the Worker's Disability
Compensation Act because the decedent and defendant were co-
employees where issues of fact were involved in deciding
whether the defendant was an employee of the decedent's
employer; a mixed question of law and fact can be submitted to
the jury under proper instructions.

3. TORTS—TEST—EMPLOYER-EMPLOYEE—INDEPENDENT CONTRACTOR—
EMPLOYER'S RIGHT TO CONTROL.

The traditional test in Michigan tort cases for deciding whether
an employer-employee relationship or an employer-independent
contractor relationship existed in a particular situation is the

REFERENCES FOR POINTS IN HEADNOTES
[1] 75 Am Jur 2d, Trial § 384.
[2] 75 Am Jur 2d, Trial § 323.
[3, 4, 8, 9] 81 Am Jur 2d, Workmen's Compensation § 169.
[5–7] 81 Am Jur 2d, Workmen's Compensation § 67.
 Right to maintain direct action against fellow employee for injury
  or death covered by Workmen's Compensation. 21 ALR3d 845.
[10] 22 Am Jur 2d, Death § 254.

extent of the employer's right to control whether exercised or not.

4. WORKMEN'S COMPENSATION—ECONOMIC REALITY TEST—EMPLOYER-EMPLOYEE RELATIONSHIPS—CONTROL.

The test applied in Michigan workmen's compensation cases since 1959 to decide whether an employer-employee relationship exists is that of economic reality; this test includes eight factors or guides, one of which is control.

5. TORTS—WRONGFUL DEATH—ECONOMIC REALITY TEST—WORKMEN'S COMPENSATION—CO-EMPLOYEES—STATUTES.

The mere fact that a defendant seeks to avail himself of the co-employee immunity from suit provision of the Worker's Disability Compensation Act does not mean that the economic reality test, whose purpose is to extend workmen's compensation benefits to greater numbers, must be applied in a tort action for wrongful death (MCLA 418.161[1], 418.827[1]; MSA 17.237[161] [1], 17.237[827] [1]).

### DISSENT BY V. J. BRENNAN, J.

6. WORKMEN'S COMPENSATION—COMMON LAW—CO-EMPLOYEES—EXCLUSIVE REMEDY—STATUTES.

*The Worker's Disability Compensation Act bars a common law action by an employee against a co-employee for a job-related injury which occurs during the course of employment; in those situations, the injured party's sole avenue of recovery is the exclusive remedy provided by the act (MCLA 418.131, 418.301, 418.827; MSA 17.237[131], 17.237[301], 17.237[827]).*

7. WORKMEN'S COMPENSATION—WRONGFUL DEATH—CIRCUIT COURT—JURISDICTION—CO-EMPLOYEES—QUESTIONS OF LAW—STATUTES.

*A statutory jurisdictional defense provided in the Worker's Disability Compensation Act and raised by a defendant in a wrongful death action in circuit court regarding the defendant's status as a co-employee of the deceased and whether the accident responsible for the decedent's death occurred during their common employment involves questions of law to be resolved by the judge on a separate record prior to trial; where the principals were co-employees and the death occurred during their common employment the plaintiff's exclusive remedy lies under the act and the circuit court has no subject matter jurisdiction over the matter; where the principals were not co-employees, the plaintiff may pursue a common law negligence*

*suit against the defendant in the circuit court (MCLA 418.131, 418.301, 418.827; MSA 17.237[131], 17.237[301], 17.237[827]).*

8. WORKMEN'S COMPENSATION—ECONOMIC REALITY TEST—EMPLOYER-EMPLOYEE RELATIONSHIPS—TORTS—CONTROL TEST—STATUTES.

*The economic reality test is applied by the courts in determining the employer-employee relationship in connection with worker's compensation and unemployment compensation questions; the control test is used for tort claims wholly unrelated to the Worker's Disability Compensation Act to determine employee status such as with questions of vicarious liability.*

9. WORKMEN'S COMPENSATION—ECONOMIC REALITY TEST—WRONGFUL DEATH—CIRCUIT COURT—CO-EMPLOYEES—TORTS—STATUTES.

*The economic reality test is used in a wrongful death action in circuit court to decide whether the defendant and the decedent were co-employees, and therefore, whether the defendant can use provisions of the Worker's Disability Compensation Act regarding co-employees as a shield against the plaintiff's action where the plaintiff's case is neither a tort claim alone nor a claim for statutory compensation from the defendant's employer (MCLA 418.131, 418.301, 418.827; MSA 17.237[131], 17.237[301], 17.237[827]).*

10. NEGLIGENCE—JURY—JURY QUESTIONS—WRONGFUL DEATH—BONA FIDE DISPUTES.

*The negligence of a job supervisor, the decedent or the defendant, in a wrongful death action, are questions which are properly left to the jury, where a bona fide dispute exists.*

Appeal from Sanilac, Allen E. Keyes, J. Submitted June 21, 1977, at Detroit. (Docket No. 29607.) Decided December 8, 1977. Limited leave to appeal granted, 402 Mich —.

Complaint by Bertha Nichol, administratrix of the estate of Milo Nichol, deceased, against Wayne Billot seeking damages for wrongful death resulting from a sewer excavation cave-in. Judgment for defendant. Plaintiff appeals. Affirmed.

*Marston, Sachs, Nunn, Kates, Kadushin & O'Hare, P. C.* (by *David K. Barnes),* for plaintiff.

*Drillock, Atkins, Schrope & Marcus,* for defendant.

Before: Beasley, P. J., and V. J. Brennan and J. R. McDonald,* JJ.

Beasley, P. J. On August 9, 1971, during construction of additional sites at a Sandusky trailer park, plaintiff's decedent, a courageous, 70-year-old retiree, was crushed to death when the wall of a trench, in which he was attaching a sewer pipe to an existing septic tank, collapsed.

Plaintiff seeks damages for wrongful death from defendant, the excavator who dug the trench which was more than nine feet deep, on the theory that defendant was an independent contractor and that he negligently failed to slope and shore the walls of the trench as required under accepted safety standards. Plaintiff's decedent, who resided in the trailer park, was employed on a part-time basis by the owner of the trailer park.[1]

Defendant denied liability claiming that, as a co-employee of the trailer park owner, he was immune from liability to plaintiff by virtue of the provisions of the workmen's compensation statute,[2] and that, even if not immune, he was not negligent and that plaintiff's decedent was guilty of contributory negligence.

On November 10, 1972, shortly after suit was commenced, defendant moved for summary judgment, again claiming that he, defendant, was an employee of and under the control of the owner of

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] Plaintiff successfully claimed workmen's compensation benefits for wrongful death from his employer who owned the trailer park and who had compensated plaintiff's decedent for work done by him by applying his wages against rent for space in the trailer park.

[2] Now known as Worker's Disability Compensation Act; *see,* MCLA 418.161(1) and 418.827(1); MSA 17.237(161)(1) and 17.237(827)(1).

the trailer park who acted through an "on-site" supervising manager,[3] that he was hired to do some excavating on an hourly rate, that he was not and could not be liable for damages arising from the death of plaintiff's decedent because the provisions of the workmen's compensation law precluded it, and that plaintiff should look to his employer for workmen's compensation benefits.

Plaintiff answered defendant's motion by claiming there were issues of fact which could not be decided by the trial judge, but which would have to go to the jury. Plaintiff filed a memorandum brief, in which the conclusion is:

"Inasmuch as there is a conflict in the evidence, as indicated by the affidavit and depositions and inasmuch as the conflict presents *a question of fact for the jury,* the issue of whether or not the arrangement between the Billot Excavating Company and Thomas Boyle was that of employer-employee, or of an independent contractor, cannot be determined by the Court on the Motion for Summary Judgment, and the Motion for Summary Judgment must, therefore, be denied." (Emphasis added.) Plaintiff's brief, dated January 2, 1974.

Eventually, on January 15, 1974, the then trial judge held with plaintiff and denied defendant's motion for summary judgment, holding the issue of whether defendant was an independent contractor or an employee of the trailer park owner was one of fact, depending upon the degree of control that the manager of the trailer park exercised over defendant and, therefore, was for a jury and not a judge.

Subsequently, after completion of discovery and pre-trial conference, defendant filed another mo-

---

[3] The on-site supervising manager was the previous owner of the trailer park.

tion for summary judgment, which was also denied.

In a three-day trial in March, 1976, a jury received all the issues, including the independent contractor-co-employee one, and found no cause of action in favor of defendant.

On appeal, plaintiff raises various issues, the first of which is that it was error to deny plaintiff's motion to strike defendant's affirmative defense that plaintiff's claim was barred under the workmen's compensation act because plaintiff's decedent and defendant were co-employees of the trailer park owner.

Plaintiff's motion was made after all the proofs were in and both sides had rested. The motion rested upon the following assumptions:

1) that there were no issues of fact,

2) that the question was one of law for the judge to decide, and

3) that the "economic reality" test rather than the "control" test, was the correct measure to be applied in deciding the motion.

Defendant denied each assumption.

At this point, with respect to the first two assumptions, both sides had switched from their earlier positions taken in connection with defendant's first motion for summary judgment.

Thus, on appeal, plaintiff takes an inconsistent position to that which he urged upon the trial court prior to trial. It can be argued that plaintiff has waived his alleged right to have the trial judge decide whether defendant was an employee of the trailer park owner by urging the trial judge to submit this question to the jury in his above quoted memorandum brief in response to defendant's motion for summary judgment. It can also be argued that by waiting until all the proofs were

introduced before switching positions and moving the trial judge to rule as a matter of law that defendant was such an employee and, thus, to strike that affirmative defense, that plaintiff waived his right by delaying too long.

However, apart from this matter of possible waiver, were there issues of fact to be decided preliminary to disposition of the question of whether defendant was an employee of the trailer park owner? Some indication that there were such issues is the fact that plaintiff and defendant adopt diametrically different versions of the alleged facts. For example, plaintiff claims that defendant was an independent contractor who had a duty to comply with the statutory safety standards, while defendant claims that the trailer park manager exercised complete control over both plaintiff's decedent and defendant, including where the trench would be located, how defendant would dig, *i.e.,* size of bucket, and the depth, size and width of the trench.[4] Often such questions are mixed questions of law and fact. Here the record supports a finding that there were issues of fact. Therefore, we decline to find error in the trial judge's conclusion that there were issues of fact involved in deciding whether defendant was an employee of the trailer park owner and that the mixed questions of law and fact could be submitted to the jury under proper instructions.[5]

The next issue has to do with whether to apply the "control" test or the "economic reality" test in instructing the jury as to the correct measure for deciding whether defendant was an employee of

[4] We point out that while a person may ordinarily hold himself out as an independent contractor, he may be an employee under all the circumstances of a particular job.

[5] *Bonin v Gralewicz,* 378 Mich 521; 146 NW2d 647 (1966), *Ray v Transamerica Insurance Co,* 46 Mich App 647; 208 NW2d 610 (1973).

the trailer park owner or an independent contractor. In Michigan tort cases, the traditional test for deciding whether an employer-employee relationship or an employer-independent contractor relationship existed in a particular situation is the extent of the employer's right to control whether exercised or not.[6]

Since 1959 in Michigan workmen's compensation cases, the test of whether an employer-employee relationship exists is that of economic reality.[7] This test includes some eight factors or guides, one of which is control.[8]

By way of affirmative defense, defendant claims to be an employee of the trailer park owner under control of the on-the-job manager. Defendant claims that since this is a tort case, the control test applies.[9] He concludes he is immune from claim by plaintiff under the co-employee exclusion of the workmen's compensation statute.

Plaintiff says the trial court erred in looking to the control test. It is plaintiff's position that since defendant seeks to avail himself of the protection of the workmen's compensation statute, the economic reality test must and does apply.

[6] *Dennis v Sinclair Lumber & Fuel Co,* 242 Mich 89; 218 NW 781 (1928), *Gall v Detroit Journal Co,* 191 Mich 405; 158 NW 36 (1916).

[7] *Tata v Muskovitz,* 354 Mich 695, 699; 94 NW2d 71 (1959):

"It is time now to complete the cycle of departure from and return to *all* of the measures by which, under the clear weight of authority in this country, the relationship of employer and employee is rightfully identified for compensatory purposes. I move, then, with sight aimed at definite settlement of the steadily recurring question the parties—in the light of the quoted and adopted finding of facts—have stated and counterstated, that we now establish Mr. Justice Smith's dissenting opinion in *Powell v Employment Security Commission,* 345 Mich 455, 462 [75 NW2d 874 (1956)], as proper guide to relevant interpretation of the workmen's compensation law." (Emphasis in original.)

[8] *McKissic v Bodine,* 42 Mich App 203; 201 NW2d 333 (1972), *Powell v Employment Security Commission, supra,* dissenting opinion cited in *Tata, supra.*

[9] *Sliter v Cobb,* 388 Mich 202; 200 NW2d 67 (1972), *reversing* 36 Mich App 471; 194 NW2d 75 (1971).

We do not believe that the control test has been overruled and replaced in tort cases.[10] This is a tort case. The mere fact that defendant seeks to avail himself of the co-employee immunity from suit provision of the workmen's compensation statute does not mean that the economic reality test, whose purpose is to extend workmen's compensation benefits to greater numbers, must be applied. Consequently, we decline to find error in the refusal to apply the economic reality test.

Plaintiff also challenges the jury instructions. Taken as a whole, the trial court's instruction to the jury was not reversibly erroneous. There was sufficient evidence to justify instructing the jury regarding the possible contributory negligence of plaintiff's decedent.[11]

Plaintiff's other claims of error are without merit.

Affirmed, with costs.


J. R. McDONALD, J., concurred.


V. J. BRENNAN, J. *(dissenting)*. I disagree with the majority in this matter. The Worker's Disability Compensation Act [hereafter WDCA] bars a common law action by an employee against a co-employee for a job-related injury which occurs during the course of employment. MCLA 418.131, 418.301, 418.827; MSA 17.237(131), 17.237(301), 17.237(827). In those situations, the injured party's sole avenue of recovery is the exclusive remedy provided by the WDCA. *Herndon v UAW Local No*

---

[10] *Sliter v Cobb, supra;* the Supreme Court did *not* overrule that part of the Court of Appeals decision which declined to replace the control test with the economic reality test in tort cases.

[11] *Funk v General Motors Corp,* 392 Mich 91, 113; 220 NW2d 641 (1974).

*3,* 56 Mich App 435, 436–437; 224 NW2d 334 (1974).

When defendant raised the WDCA as a defense to plaintiff's suit, he was raising a statutory, jurisdictional defense[1] which should have been resolved

---

[1] The circuit court can decide whether its jurisdiction extends to this case. To do so, the court must determine whether defendant was plaintiff's co-employee under the WDCA. I would distinguish one recent decision of the Michigan Supreme Court. *Szydlowski v General Motors Corp,* 397 Mich 356; 245 NW2d 26 (1976). In *Szydlowski,* where plaintiff filed a claim for workman's compensation with the bureau which was dismissed twice for no progress and then filed a wrongful death action in circuit court trying to recover compensation under a mandatory statutory medical service provision of the WDCA, the Court denied the circuit court the jurisdiction to hear the case.

I would distinguish that case as dealing with a claim involving the grant of workman's compensation benefits under circumstances which would have completely usurped the primary function of the Workman's Compensation Bureau had the Court allowed the circuit court concurrent jurisdiction. Plaintiff based her entire suit on the mandatory WDCA warranty insuring "reasonable medical, surgical and hospital services". Given the way she framed her action, the trial court could not have given judgment without directly passing upon a recovery provision of the act. Certainly, such action would serve to replace the exclusive function the act reserved to the Workman's Compensation Bureau.

In the case before us now, plaintiff does not seek to substitute the trial court for the bureau. The action alone seeks determination of the trial court's rightful jurisdiction—that is, whether plaintiff's action violates the statutory jurisdiction of the WDCA. This question the court must answer. The court must have jurisdiction to decide the matter of its own jurisdiction. Its resolution of jurisdictional facts is appropriate to the singular purpose of resolving the jurisdictional problem.

Further, *Szydlowski* involved the question whether injuries arose out of and during the course of employment and whether those injuries were compensable under a provision of the act. No determination of employee or employer status and its implications arose for the court to consider there.

In short, we find the particular question addressed by the trial court properly raised and resolved there. The court must and the act intends to allow circuit court determination of legal questions involving legitimate matters of jurisdiction touching its own court. If the suit conflicts with the ability of the Workman's Compensation Bureau to award compensation, then the circuit court must deny the parties' attempt to litigate there. However, the circumstances presented by this case and others involving statutory defenses under the act must be resolved by the trial court as to the jurisdictional implications under the act.

before the case proceeded to trial. As can be seen
from the briefs and the trial transcript, a primary
dispute in this case is whether or not defendant
and plaintiff's decedent were co-employees. If they
were co-employees and the accident responsible for
decedent's death occurred during their common
employment, then plaintiff's exclusive remedy lay
under the WDCA and the circuit court had no
subject matter jurisdiction over the matter. How-
ever, if the principals were not co-employees,
plaintiff could pursue a common law negligence
suit against defendant in the circuit court.[2]

Regardless of whether material questions of fact
exist concerning the underlying negligence claim,
the primary question which the trial court should
have resolved before any other on a separate
record was that of defendant's status under the
WDCA.[3] So constituted, the question was not a
question of fact for the jury to decide; the question
was one of law for the judge. See *Chester v World*

[2] Once the court separately determined that the WDCA did not
preclude a cause of action in tort, having so properly placed the suit
before the court, plaintiff could then bring its motion for summary
judgment on the negligence claim. GCR 1963, 117.2. He might then
allege no material issue of fact under 117.2(3), at which point the
court might have conceivably denied the motion on the basis of
factual disputes.

[3] Being a jurisdictional question, defendant's claim under the
WDCA can be brought at any time. *See, Fox v Board of Regents of
the University of Michigan,* 375 Mich 238, 242; 132 NW2d 146 (1965).
However, as the gist of the claim asserts lack of subject matter
jurisdiction, the most appropriate vehicle would be a motion for
accelerated judgment under GCR 1963, 116.1(2). *See St Paul Fire &
Marine Insurance Co v Littky,* 60 Mich App 375, 377; 230 NW2d 440
(1975). We do not believe a motion for summary judgment is proper.
*See, Renfroe v Higgins Rack Coating & Mfg Co, Inc, supra,* at 262. *See
also, St Paul Fire & Marine Insurance Co v Littky, supra,* at 377. The
determination of whether a cause of action should proceed to trial on
the merits is distinct from the legal question concerning the court's
ability to hear and decide the case. Any dispute of jurisdictional fact
should be resolved by the trial court incident to its consideration of
jurisdiction under GCR 1963, 116.1(2). A separate hearing to resolve
these disputed jurisdictional facts may be necessary.

*Football League,* 75 Mich App 455, 462; 255 NW2d
643 (1977) (V. J. Brennan, J., concurring in part,
dissenting in part), *Askew v Macomber,* 63 Mich
App 359, 362; 234 NW2d 523 (1975), *Renfroe v
Higgins Rack Coating & Manufacturing Co, Inc,* 17
Mich App 259, 261–262; 169 NW2d 326 (1969).

Since *Tata v Muskovitz,* 354 Mich 695; 94 NW2d
71 (1959), the economic reality test has been con-
sistently applied by Michigan courts in determin-
ing the employer-employee relationship in connec-
tion with worker's compensation and unemploy-
ment compensation questions. See *Higgins v Mon-
roe Evening News,* 70 Mich App 407, 414–415; 245
NW2d 769 (1976), *Moore v Gundelfinger,* 56 Mich
App 73, 80; 223 NW2d 643 (1974), *White v Extra
Labor Power of America,* 54 Mich App 370, 374;
221 NW2d 214 (1974). On the other hand, in
relation to tort claims wholly unrelated to the
WDCA, the control test has been correctly used to
determine employee status such as with questions
of vicarious liability *(respondeat superior).* See
*Sliter v Cobb,* 36 Mich App 471, 490; 194 NW2d 75
(1971), *rev'd on other grounds,* 388 Mich 202; 200
NW2d 67 (1972), and *Kaniewski v Warner,* 12
Mich App 355; 163 NW2d 34 (1968).

In the present case, the court faced its summary
judgment decision in the context of a tort claim
but with defendant relying on the WDCA in an
effort to escape plaintiff's suit. Consequently, the
case did not then represent either a tort claim
alone or a claim for statutory compensation, as
against defendant's employer. See *Higgins, supra.*
Under these circumstances, I would hold that the
logical test to use in deciding whether or not
defendant can use the WDCA as a shield against
the plaintiff must be the WDCA test, not the
control test. *Chester v World Football League,
supra,* at 462. See *Cronk v Chevrolet Local 659, 32*

Mich App 394, 398; 189 NW2d 16 (1971), *lev den,* 385 Mich 784 (1971). Hence, the judge should have used the economic reality test in deciding whether or not defendant was Boyle's employee, and therefore the decedent's co-employee.

In applying the economic reality test to the facts as presented,[4] I conclude as a matter of law that the defendant was not an employee within the meaning of the WDCA.[5] See *McKissic v Bodine,* 42

[4] Sufficient factual evidence was presented by the record to allow a legally informed decision by the trial court as to whether defendant was an employee under the WDCA.

[5] Considered in this case, the economic realities do not indicate defendant was an employee under the WDCA. Defendant Billot testified that he and his father owned a small enterprise known as Billot Excavating Co. They owned a backhoe, an end loader, a bulldozer and three trucks. They supplied all equipment for jobs they handled. Defendant considered himself self-employed. He managed his social security and taxes himself. He was not carried on employment rolls for the jobs he took. He was paid a flat rate of $12 per hour for his work with the backhoe. This procedure was followed when defendant did the job for trailer park owner Boyle. Concurrent with work done for owner Boyle, defendant was working for several other persons. His living expenses did not depend primarily on emolument from owner Boyle. He was listed in the phone book as an excavating contractor. Defendant was not hired for purposes directly related to the operation of Boyle's trailer park.

In short, the only factor of the eight ordinarily enumerated which applied to defendant with some accuracy was the control factor. Owner Boyle did maintain some degree of control over defendant while he was actually engaged in the operation of positioning and digging the trench. Obvious evidence of this control appears from the fact that owner Boyle contracted a specific overall supervisor for the trailer park expansion project, O. J. Campbell, the former owner of the park, and that supervisor Campbell was specifically responsible for obtaining defendant's services. Campbell was present and directly involved with the operation of constructing the trench. Consequently, defendant may well have looked like an employee under the control test but not so under the economic reality test.

Potential prejudice appears when the fact is considered that the jury found no cause of action against defendant when instructed under the control test and then was allowed to determine the WDCA defense according to that standard. We might note incidentally, though nonessential for decision of the WDCA defense, that defendant may well be characterized as an independent contractor even were the control test used. However, the question is close enough under that test so the potential for prejudice cannot be eliminated with any degree of certainty.

Mich App 203, 208–209; 201 NW2d 333 (1972). The reasoning and result I reach on this important question is in line with the purposes of the WDCA, which are (1) to bring about reimbursement of the employer or insurance carrier who has paid worker's compensation benefits to the injured employee and (2) to allow the injured employee to obtain recovery beyond the statutory worker's compensation benefits. See *Hix v Besser Co,* 19 Mich App 468, 472–473; 172 NW2d 821 (1969), *aff'd in part, vacated in part on other grounds,* 386 Mich 499; 194 NW2d 333 (1972).

Consequently, the trial judge should have found that defendant was not an employee within the meaning of the WDCA, thus providing a basis for subject matter jurisdiction of plaintiff's tort action in the circuit court.

Thereafter, were the trial court to later submit the question of defendant's possible negligence to the jury, in the totally unlikely situation that defendant's working status was at issue,[6] the court could have at that time framed its instructions in terms of the control test. See *Kendrick v Graddis,* 75 Mich App 383, 386, n 1; 255 NW2d 14 (1977), *Sliter v Cobb, supra,* at 490. However, the court's failure to distinguish the proper standard under the WDCA claim constitutes error and requires reversal.

---

[6] Because plaintiff is suing defendant, a fellow worker, rather than owner Boyle, the question of whether either party was an employee or independent contractor has no legal significance for purposes of tort liability in this case. Consequently, the court would likely never be in a position to instruct the jury on this matter under any test. Note that if plaintiff had sued owner Boyle, the question of employee or independent contractor entails considerations of different standards of care by which defendant's duty would be tested. *See, Kendrick v Graddis, supra. See,* regarding the standard of care for independent contractors as against employees, *Holgate v Chrysler Corp,* 279 Mich 24, 30; 271 NW 539 (1937). *See also* 16 Callaghan's Michigan Civil Jurisprudence, Master and Servant, § 67, pp 457–458.

The jury may well have exonerated defendant after concluding that he was an employee of the trailer park and not an independent contractor. Such a conclusion was reached under legally incorrect guidelines.

The plaintiff also objects to the submission of contributory negligence and negligence questions to the jury. However, our courts strongly favor jury determination of contributory negligence questions, *Funk v General Motors Corp,* 392 Mich 91, 113; 220 NW2d 641 (1974), *Jaworski v Great Scott Supermarkets,* 71 Mich App 235; 247 NW2d 363 (1976), and negligence questions, *Miller v Miller,* 373 Mich 519, 524; 129 NW2d 885 (1964), *Witucke v Presque Isle Bank,* 68 Mich App 599, 612; 243 NW2d 907 (1976). Further, in the instant case, where bona fide disputes existed over who was negligent, supervisor Campbell, the decedent or the defendant, the questions were properly left to the jury.

I would reverse and remand to the trial court for a new trial.